Good morning. Lila Morgan, Federal Defenders of San Diego, on behalf of Mr. Martinez-Arrasola. Mr. Martinez's conviction should be reversed because the District Court erred in failing to instruct the jury on Mr. Martinez's theory of defense. Section 1326 states that an alien who has previously been removed is guilty of a felony if, prior to reentry, he has not received the express consent of the Attorney General to his reapplication for admission, unless he shall establish that he was not required to obtain such advance consent under this chapter any prior act. Mr. Martinez was such an alien who did not require the advance consent of the Attorney General prior to his reapplication for admission. Your assumption is that he's governed by the pre-arrival law? Yes. Why is that? Well, first, because the statute specifically states any prior act. The pre-arrival law would be a prior act. The language of the statute is ambiguous, which requires the Court to err on the side of Mr. Martinez under the rule of lenity. Further, Mr. Martinez's ability to reenter without the application, without specifically reapplying to the Attorney General vested in 1994 pre-arrival. So making that provision specifically retroactive to him is impermissible. Well, that's sort of not probably consistent with the Supreme Court's exegesis on Landgraf and the other cases, wouldn't you say? To say he has a vested interest in reentry probably doesn't cut it anymore under the Supreme Court jurisprudence, I would think. It's quite difficult because he doesn't have an unreasonable reliance. But there's problems with his reliance. But I do think that under the any prior act provision, which hasn't been interpreted, hasn't been amended, and hasn't been changed since the establishment of 1326 and 1952, that Mr. Martinez still has a viable defense. Is it an element of the crime that the government show that Mr. Martinez or someone else similarly situated was required to have the consent of the Attorney General? That hasn't been specifically addressed by this Court, but it seems that it has to be. Since the statute lays it out, there's a two-step process in reentry after being deported. One, you apply to the Attorney General and get permission to reapply for admission. And then, secondly, you can get permission to reenter, such as a visa or a border crossing. Right. But it's an element. It's clearly an element of the crime that you reentered without permission. And then there's an exception. For those who don't need the consent. Right. Right. But is it does the government have to prove in every case that the exception doesn't apply? I think the government does have to show that the exception doesn't apply or that he didn't have the consent. Well, but your client didn't have the consent. He didn't have the consent, but the exception applies. But, Mike, I guess what I'm trying to get at is who has the burden of raising the issue of whether the exception applies? In every 1326 case, does the government have to prove that the exception doesn't apply? I wouldn't necessarily. I would say, yes, but in this particular fact situation, the defense raised enough of an inference that. How did it do that? What evidence was there that raised the inference? Or that raised the issue? It was evidence through cross-examination of the government agents and the government witnesses. The AFILE custodian testified that Mr. Martinez had no immigration contacts, no reentries, from the period of 1989 until his reentry in 2005, a period of 16 years. Further, the government entered a statement by Mr. Martinez stating that he had just reentered and this was his first reentry. So that was sufficient to show that he had been gone the requisite period of time and thus the exception applied. So the evidence is his own statements in the AFILE? Well, the testimony, the AFILE itself and the testimony of the AFILE custodian about the absence of the records. So there's a possibility he could have been in the window, assuming that there was a window, and that's enough to entitle him to the instruction? Yes. The law in this circuit is clear that as long as there's any evidence, regardless of, I think it's United States v. Lemon, that tells us that the evidence presented by Mr. can be weak or insufficient. But is there a factual finding to be made there? I mean, is the issue being posed a factual one to be made by a jury or a legal one to be made by the court? It's a factual one to be made by the jury at the time that the jury must determine whether or not he was gone the requisite period of time. Well, but is that really the issue? Because the statute doesn't turn on, doesn't say gone the requisite period of time. It speaks rather of whether he's required to get the permission to apply for reentry. Isn't that a legal question? I think it's both. I think there's a legal issue as to whether or not Mr. Martinez could possibly be in the class of aliens that doesn't need permission. But the facts weren't disputed here, were they? I mean, nobody's arguing that he hadn't been gone from the first date to the last date. No. And so is, I mean, I'm sort of puzzled as to what it is a jury is supposed to make out of all of that. They're not being asked to make a factual determination. I think that they have to determine whether or not, once the law is established that he, should they find that he was gone, in this particular case. Isn't the problem the judge didn't agree with the proposition that being gone that period of time triggered the exception to the statute? Right. Well, that's their – okay, if the judge makes that factual determination, you can challenge that. But I don't understand what about an instruction is defective or what the jury is supposed to be told. Well, we argued, and it's our position that the jury should have been told if he was gone the requisite period of time, if they made that finding, then he wouldn't have – they could find that he didn't need the permission. That is a factual issue they have to determine. There's a legal issue that the Court determined about whether or not this exception applied and to whom it applies. That's really what's being challenged here. It's – I think it's both. This was Mr. Martinez's theory of defense. And the fact that there is both a legal and factual question to get to the theory of defense makes it – If the Court determined that being gone that period of time didn't make any difference, there's nothing to instruct the jury about, is there? Right. So I think it goes right back to the question of whether the judge's determination of immigration law was correct. In some ways, it does come down exactly to that. Do you want to talk about the sentence or do you want to reserve your time? I'll talk about the sentence briefly. Mr. Martinez's sentence is impermissible because there was no date of deportation alleged in the indictment, and that is a structural error. Mr. Martinez was subject to only the 24-month statutory maximum with a one-year term of supervised release. In his – in this case, the government failed to allege any date of deportation or any date that the deportation happened subsequent to, which subjects Mr. Martinez only to the 24-month statutory maximum. If it's not structural error, it's either plain error or harmless error, would your client lose then? Under – under harmless error, I think – I think under either case it might lose. However, the – the problem with looking at this question in a term of harmless error is that asks this Court or the – even the district court to place itself in what the grand jury was thinking, what they might have seen, what might have been presented to them. And the government in this case has presented no evidence to show what they presented to the grand jury. So – If we're willing to accept it as not a structural error for purposes of what a jury finds beyond a reasonable doubt, is it really hard to say that a grand jury operating on a much lesser standard without a requirement of unanimity could have made the same finding and would have made the same finding in the evidence available? I mean, logically, if we – if we're willing to close our eyes to that for the jury, I can't imagine how we can't close our eyes to that for the grand jury. The – the – I think the problem with closing our eyes to it as far as the grand jury goes, we have no idea what they saw. And the grand jury's function and their right is to pass on certain elements of the offense. So we don't know what decisions they made. And the government's presented no evidence of what they showed to the grand jury or what they didn't. For all we know in this hypothetical world, the grand jury could have decided that because Mr. Martinez had been gone for 20 years, they were choosing not to invite him on 1326B. That's a function and a right of the grand jury. And so given that, I don't think we can substitute our – our place for them. And there's no evidence to show that it was harmless. And with that, I'll defer. I'll save the rest of your time. Good morning. Good morning. May it please the Court, Christina McCall for the United States. The defendant in this case never applied for and never received permission or a visa to enter the United States. There's no evidence in the record of his ever filing an application to return or an application for a visa. This argument is confusing in that it attempts to superimpose a visa application requirement onto the Attorney General's permission provision of Section 1326. Essentially, the defendant, who never availed himself of this affirmative defense, is trying to force the government to disprove something he never raised. The basic argument boils down to this. After someone who has committed a particularly serious aggravated felony gets lawfully deported, if he nearly waits a certain amount of time, whether it be five years, 10 years, or 20 years, he can return with impunity. Disregarding an impunity. Well, it's possible the immigration law could so provide. I'm not saying that it is. But you can imagine a situation where somebody writing immigration law would say, okay, enough time has passed, let bygones be bygones. And if that were the case, then presumably the defendant would have something more to work with than you think he does. So aren't you really arguing about the state of immigration law? That's true. It may be that having the immigration law the way the defendant says it is might be illogical, but that doesn't mean it's not that way. I mean, I agree with the proposition. It seems odd to say wait long enough and you're home free. But I've seen stranger statutes in my day. So how do we know that their take on immigration law isn't right? Well, we could look at various provisions of the immigration code. For instance, section 1101A43 says that it defines what is an aggravated felony. The defendant qualifies for that. And section 1182A9A states that there is a 20-year ban on visa applications. In addition, we have the whole section 212, which basically imposes requirements for people to reenter this country, and accompanying that are a bunch of code of Federal regulations that further interpret these and provide exact examples. In this case, the defendant's own actions show that he knew he lacked permission to reenter the United States. First, he was found about 14 miles north of the border in a very treacherous area of the Tecate Mountains. He was crouching under the bushes with a group of ten other people. It was in the middle of the night when he was apprehended. Well, the statute is unusual in various respects, and I assume there's a reason it was done the way it was done. But it doesn't say found in the United States without having gone through a proper border crossing. I mean, clearly he didn't. Maybe he didn't like lines. I don't know. But it doesn't say that. So I'm not sure. I mean, you can infer from the fact that he snuck across the way he did that he probably didn't have permission or permission to apply for entry. But, again, I think the whole thing reverts back to the statute. The facts don't seem to be much in dispute here. Right. But they do indicate that the defendant himself realized that he lacked this permission. He never applied for the permission. Essentially, in the case of Cervantes Flores, it sets forth a two-part procedure for a deported alien to reenter the United States. And the first step of this is applying to either the Attorney General or the Secretary of Homeland Security for permission to reenter. If that permission is granted, then the second step is to apply to the State Department to receive a visa. In this case, there's no evidence in the record that the defendant ever took the first step, which is applying to the Attorney General or the Homeland Security Secretary. No evidence that such permission was ever granted. Specifically, the AFILE custodian testified to that at trial. And then the second step, which, of course, he never reached, would be an application for a visa with the State Department, and, again, that was never granted. And your argument is that the visa waiver provision doesn't apply in any event here? Right. We never reached that step in this case, because this defendant never went through the first step of applying for permission from the Attorney General. Well, his argument is he didn't have to. That's essentially what Judge Clifton said, that a fair reading of the statute is that after five years, you don't have to. Well, a fair reading of the statute, this statute which only applies to visa applications, first of all, that before someone could apply for a visa, they would need to wait at least five years. This defendant never applied for a visa. He actually never was even able to reach that step. That's the legal question. But let's just assume for the sake of argument that the statute's ambiguous and the defendant gets the benefit of the doubt. Is there, what do you think of counsel's argument that there are enough facts in the record to support the affirmative defense? Regardless of how long the defendant stayed outside the United States, which, frankly, we're not sure. We have his claim that he remained outside, and we have an absence of immigration context in that time. Who knows if he could have snuck in, resided here, and not generated any arrest reports. But even if he did stay outside for five years or longer, he still did not satisfy the requirements. He is still guilty of a 1326 because he still reentered without consent. And we cannot graft this visa application provision on top of the consent requirement. I understand that. You're saying that the proper interpretation of immigration law is he still needed consent. But the argument here, and I just wanted to get your response on this, assuming that there's a question about that, which I'm not asking you to concede, that there might be some free pass after five years, then you get into the question of who has the burden at trial. And the government has to prove the case beyond a reasonable doubt, obviously. So is there enough evidence in the record to support defendant's argument, assuming that it has any legal lags? There is not. Essentially, the government did prove that he entered without permission. And the affirmative defense states pretty clearly, unless such alien shall establish that he was not required, merely making this legal argument, which has not been accepted by any court in this country, does not somehow transform this affirmative defense into something that the government must disprove. Well, all right. And the word establish means something, that there's something that the defendant has to do. But as I recall the way this works, they have to raise the issue. There has to be a fact or a fact that would support an inference that puts the matter at issue. And then the government still has the burden of overcoming it by proving on a reasonable doubt. The defendant doesn't have to prove beyond a reasonable doubt that the exception applies. So what I'm trying to hone in on is whether you think there's any evidence beyond the legal argument. And I asked counsel the same question, and she said that she thought that there was enough through cross-examination in the testimony of the agent. And I just would like your thoughts about that. I don't believe that there was any evidence, other than an absence of a contact from the time that this defendant was deported back in 1989 until the time that he was captured hiding under the bushes. The absence of any arrest record is not enough to qualify for this affirmative defense and shift the burden back to the government to disprove it. There's a complete absence of the record. The defendant called no witnesses, introduced no evidence on this point, and merely ---- There was evidence upon which someone could factually conclude he wasn't in the country for that time. Isn't that true? Well, there is an absence of evidence. Well, there was evidence as to when, as far as the government was concerned, he left, and evidence as to when he came back. And math will tell you that's a certain period of time. And no evidence of him being here in between. So if it were true that all he needed to demonstrate is that he hadn't been in the country for a certain period of time, there was enough evidence for a jury to reach that conclusion, wasn't there? Well, okay. If the ---- I'm trying to make the question as simple but as inescapable as I can. It seems to me if you give an answer other than there was enough evidence, I got a hard time figuring out what that answer is based on. Because you've got to accept the premise that if their legal take is correct, well, okay, he probably wasn't in the country during the time or the jury could have determined that, and the jury should have been given the basis to determine that. The jury wasn't given the basis to determine that, so you've got to go backwards and rest on the legal question, which I've assumed away in my question. Right. So if you do, in fact, assume away the legal question, if you accept the defendant's take on the law, then it seems to me it's inescapable there was a problem here because the jury wasn't given the opportunity to pass on the factual question. Your position, I think, has to be there wasn't ---- is the legal one. That is, that the trigger, the legal requirement, isn't satisfied by being out of the country for a certain period of time. That's right. If we do assume that merely remaining outside of the country is a complete defense, there was no evidence that the defendant was in the country for a certain amount of time. So I will concede that. But the legal premise is still flawed. Yeah. We understand your point on that. Okay. Thank you. Thank you. First, I think that the question gets confused with whether or not Mr. Martinez had permission to be here. We concede that he did not have permission to reside in the United States. There's no question he didn't have a visa. Our position is that that makes him guilty of a 1325, that a 1326, the statute for deported aliens has a separate and distinct requirement, not just that they not have permission, that he not have a visa, but that he also need to have and not complied with the civil requirements or the other requirements of deported aliens and not be getting permission of the Attorney General to comply. And that's true whether or not we rule in your favor on retroactivity? That's true whether or not we rule, whether or not you agree with me on the position of retroactivity. But this is a two-step process. There are certain classes of aliens who may not have visas, but do not need the consent of the Attorney General to reapply for admission, which an entry is, after a subsequent deportation. They may be guilty of 1325s, but they're not guilty of 1326s. Consent to reapply is not the same as consent to be here. And that's clear throughout the immigration law. You get this permission of the Attorney General before you can get a visa. Well, you don't claim he had, I mean, you don't claim he had a visa. No. You also don't claim he had permission from the Attorney General. Your argument is purely that the law didn't require him to have the Attorney General's permission. Yes. That's purely our argument, is that he didn't need that consent, which makes him not guilty. But at the same token, if he had shown he had it, he would have been not guilty. That's just not the factual scenario in this case. Okay. Thank you. Thank you. All right. The argument, we appreciate the argument. The case argued will be submitted. The next case on calendar is United States v. Fernandez-Vazquez. Thank you.
judges: Fisher, Clifton, Fogel